# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MRS. GHISOON AL-JANABI

And

MR. FREIDOON AL OMER ABADI

Plaintiffs

v.                                          Civil Action No.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
245 Murray Lane, SW
Washington DC 20528

And

KIRSTJEN NIELSEN
Secretary of US Department of Homeland Security
245 Murray Lane SW
Washington DC 20528

And

UNITED STATES DEPARTMENT OF STATE
2201 C St NW
Washington DC 20520

And

MICHAEL R. POMPEO
Secretary of US Department of State
2201 C Street NW
Washington DC 20520

Defendants

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# **INTRODUCTION**

1. Mrs. Al-Janabi has been waiting over three years for defendants to issue a visa to her husband. Defendants therefore have "unreasonably delayed" acting on her petition, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1).

2. Mrs. Al-Janabi was granted asylum under the Refugee Act of 1980, 8 U.S.C. § 1158, et seq. Her husband, plaintiff Mr. Freidoon Al Omer Abadi, lives in the city of Sharjah, in the United Arab Emirates. Mrs. Al-Janabi filed a "relative petition" for her husband, so that he could join his wife and children here in the United States. That petition was filed on February 22, 2016. *See* Exhibit 1, attached hereto. Defendant Department of Homeland Security [DHS] approved that petition, and forwarded it to the defendant Department of State [State Department].

3. The State Department forwarded the approved petition to the U.S. Embassy in Abu Dhabi, and then interviewed the husband in that city in December 2016. *See* Exhibit 2.

4. The State Department asked the husband if he was married to Ms. Al-Janabi. He said Yes, he was, and produced a marriage certificate. They were married on March 20, 1997, almost 22 years ago. The husband added that they had three fine young sons. He said he missed his sons. He said he missed his wife, and that he hoped he could soon see her.

5. The State Department asked the husband about his work history. He said he had been been a professor of Electrical Engineering, and had been, and currently was, a Projects Manager for an electromechanical works company, Al Andalous. He helped plan, construct, and build 26-floor residential buildings, a sport complex, museum, library, bus station, and a large LED display board for a soccer stadium. He has experience in installing and inspecting water and drainage components, and safety fire alarms. He has experience ensuring that the quality of

materials and installation is in accord with the contract specifications. *See* Exhibit 3, attached hereto.

6. The State Department asked the husband about his earlier travels to the United States. The husband said he had been issued a Visa on 3 October 2013, and also on 10 August 2016. *See* Exhibit 4. The husband said he had visited the United States in October 2013, in July 2014, and in May 2016.

7. Since that interview in 2016, the State Department has done nothing. The application is languishing, unattended. The Department of Homeland Security is doing nothing.

8. The husband is a highly-educated electrical engineer. He has been a successful manager of large construction projects. He is the senior engineer, nominated by his employer to be the representative to the Dubai Electricity & Water Authority, for design planning. He prepares and submits shop drawing, and oversees inspections, to make sure projects are finished on time, and safely.

9. His skills can quickly be put to use here in the United States.

10. Mrs. Al-Janabi is living with her three teenage sons here in the United States. She misses her husband, and is concerned about her boys: they need the strong hand of a father to keep them on the right path.

**JURISDICTION**

11. Under 5 U.S.C. §§ 551-706, this Court has jurisdiction. 5 U.S.C. § 551(13) defines "agency action" as including the "failure to act." §555(b) states that "within a reasonable time each agency shall proceed to conclude a matter presented to it." § 702 provides that a person "suffering legal wrong because of agency action…is entitled to judicial review thereof." § 704 provides that "agency action for which there is no other adequate remedy in court [is] subject to

judicial review." § 706(1) provides that the Court is authorized to compel agency action which has been "unlawfully withheld or unreasonably delayed."

12. "While 'reasonable time' is not a clear standard, I cannot simply ignore it." *Tang v. Ashcroft,* 493 F. Supp. 2d 148, 150 (D. Mass. 2007). A court in Illinois refused to hold that a three-year delay was reasonable, and denied a government motion to dismiss. *Haus v. Nielson, 2018* U.S. Dist. LEXIS 29003, *12 (N.D. Ill. 2018). *Accord: Soneji v. DHS,* 525 F. Supp. 2d 1151, 1156 (N.D. Cal. 2007).

13. Plaintiff-wife has a statutory right to apply for a visa for her husband, under 8 U.S.C. § 1158(b)(3)(A). Defendants must adjudicate her application within a reasonable time. Plaintiff-husband has the right to have that application ruled upon.

14. A person granted asylum is called an "asylee." Such a person may file Form I-730, "Refugee/Asylee Relative Petition," for her spouse. That petition is filed with the DHS, and after approval, is sent to the State Department for further processing. The State Department official may interview the spouse. *See Okpoko v. Heinauer,* 796 F. Supp. 2d 305, 308-09 (D.R.I. 2011).

15. A husband who is outside the United States when his wife is granted asylum, may be issued travel documents himself, that permit him to enter the United States as an asylee. 8 C.F.R. § 208.21.

16. 22 C.F.R. § 42.81(a) provides that "…when a visa application has been properly completed, …. the consular officer must either issue or refuse it."

17. In *Am. Acad. of Religion v. Chertoff,* 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) the Court cited other provisions of 22 C.F.R. which required that consular officers process nonimmigrant visa applications "properly and *promptly*," that consular officers "either issue or

refuse" a completed visa; that if grounds of ineligibility may be overcome by the presentation of additional evidence . . . a review of the refusal may be deferred for not more than 120 days.") (emphasis in original).

18. "Read together, these regulations make clear that allowing a visa application to stagnate undecided for an indefinite period of time, as the Government appears to be doing in this case, is not a permissible option." *Id.* at 421.

19. Ms. Al-Janabi needs her husband to live with her in the United States. The three boys need the influence of their father, to keep them on good paths. It is hard to be a single mother, trying to raise three teenage boys! *See* Exhibit 5.

20. Defendant DHS has approved her petition; the State Department has interviewed the husband, but still has not made a decision. There is no reason why the husband should not come to the United States. Defendants must adjudicate her application within a reasonable time. Defendants are shirking their duty.

21. "The duty to act is no duty at all if the deadline is eternity." *Tang v. Ashcroft,* 493 F. Supp. 2d 148, 150 (D. Mass. 2007). A court in Florida ruled that "administrative agencies do not possess discretion to avoid discharging the duties that Congress intended them to perform." *Elkhatib v. Butler,* 2005 WL 5226742, at *1 (S.D. Fla. 2005).

22. In *American Hospital Association v. Burwell,* 812 F.3d 183, 191 (D.C. Cir. 2016), the agency "insist[ed] that…. the department lacks the resources to" comply with the demands of a statute. The Court nonetheless ruled that "[h]owever many priorities the agency may have, and however modest its personnel and budgetary resources may be, there is a limit to how long it may use these justifications to excuse inaction in the face of" a statutory deadline. *Id.* at 193 (citing *In re United Mine Workers of America International Union,* 190 F.3d 545, 554 (D.C.Cir.

1999). The Court instructed that the agency must act: perhaps it "will have to curtail the RAC program or find some other way to meet them. Federal agencies must obey the law…" 812 F.3d at 193.

23. The D.C. Circuit has ruled that regardless of limited resources of an agency, there is a limit to delay.

24. Defendants have failed to adjudicate the application of Ms. Al-Janabi. In *Liu v. Chertoff,* 2007 WL 2435157, at *7 (D. Ore. 2007), the Court ruled that it is wrong to "render toothless all timing restraints…which would amount to a grant of permission for inaction." It is wrong to conclude "there would be no time limit to the length of time the USCIS may take processing applications." *Id.* at *8.

25. This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1331. This Court has jurisdiction to grant declaratory and other necessary relief pursuant to 28 U.S.C. § 2201-02.

26. In *Han Cao v. Upchurch,* 496 F. Supp. 2d, 569, 574 (E.D. Pa. 2007), the Court ruled that the agency does not have the discretion to let "a petition languish indefinitely."

## VENUE

27. Venue is appropriate under 28 U.S.C. § 1391, because defendants are located in the District of Columbia.

## PARTIES

28. Plaintiff Mrs. Al-Janabi is an asylee, A# 202-168-091; and is married to co-plaintiff Mr. Al Omer Abadi. She became a Legal Permanent Resident on May 15, 2016.

29. Plaintiff Mr. Freidoon Al Omer Abadi, A# 202-168-092, is married to Mrs. Al-Janabi. He is well-known to the State Department: he was issued a visa on 03 October 2013, and also on 10 August 2015.

30. Defendant United States Department of Homeland Security ("DHS") is an agency within the meaning of 5 U.S.C. § 701-706, and has the duty to adjudicate the application of plaintiffs.

31. Defendant Kirstjen Nielsen is the Secretary of the Department of Homeland Security and is sued in her official capacity. She has the duty to adjudicate the application of plaintiffs.

32. Defendant United States Department of State is an agency within the meaning of 5 U.S.C. § 701-706, and has the duty to adjudicate the application of plaintiffs.

33. Defendant Carl Pompeo Nielsen is the Secretary of the Department of State and is sued in his official capacity. He has the duty to adjudicate the application of plaintiffs.

## FIRST CAUSE OF ACTION

34. Plaintiffs repeat, re-allege, and incorporate the allegations contained in all paragraphs set forth above.

35. Mrs. Al-Janabi was born in Iraq, on August 1, 1971. She has a degree in Medicine and Surgery, and was a member of the Iraqi Medical Association. She was unable to freely practice her religion.

36. Her husband was born in Iraq, and is an electrical engineer. Two of his cousins were tortured with an electric drill, and murdered, because of their religion.

37. Three boys were born of the marriage: Azaldin, born in 1998; Saifuldeen, born in 2001, and Abdullah, born in 2002.

38. There is no reason why the husband should not be given a visa. "When a

visa application has been properly completed, …..the consular officer must either issue or refuse the visa….” 22 C.F.R. § 42.81a.

39. More than three years have gone by; Defendants have still not adjudicated plaintiffs'' applications.

40. Plaintiffs' file sits unattended, and unlooked at, in an office of defendants. Defendants are simply sitting on plaintiffs' applications.

PLAINTIFFS ARE SUFFERING REAL HARM

41. A prolonged family separation is a concrete harm.  Mrs. Al-Janabi has been separated from her husband for years. This is painful. The pain continues, and increases each day. This is a real and immediate harm.

42. The delay is having a real impact on her health and welfare. She has constant headaches. She is suffering great emotional distress.

43. Without her husband, she is not able to go through the certification and licensing process to be a physician in the United States. She needs his support and assistance, so she can advance her career.

44. She wants to have a baby girl.

45. The "right to rejoin her immediate family, [is] a right that ranks high among the interests of the individual." *Landon v. Plasencia,* 459 U.S. 21, 34 (1982).

46. Mrs. Al-Janabi faces scorn and ostracism from her friends and family who do not understand why a husband apparently "chooses" to live separately from his wife, contrary to her culture and religion.  Her friends and family think, to some degree, that it is her fault that she is separated from her husband.

47. Plaintiff-husband suffers harm, in that he is separated from his wife and his sons.

48. There are no "exceptional circumstances" justifying the delay by defendants.

49. Plaintiffs have no adequate remedy at law, and will suffer irreparable harm if the applications are not promptly adjudicated.

50. Defendants have unreasonably delayed adjudication of the applications. A delay of 2.75 years was deemed unreasonable, in *SAI v. DHS,* 149 F. Supp. 3d 88, 121 (D.D.C. 2015). A delay of 2.5 years was deemed unreasonable in *Families for Freedom v. Napolitano,* 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009).  In *Berduo v. Cissna,* 2018 U.S. Dist. LEXIS 177312, *12, 2018 WL 503593, (D. S. Caro. 2018), a "U" visa had been pending before DHS for 34 months, without action. Defendant's motion to dismiss was denied; the DHS "simply does not possess unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely." *Id.* at *13. [citations omitted].

51. In *Rodriguez v. Nielsen,* 2018 U.S. Dist LEXIS 169448 (E.D.N.Y. September 30, 2018) Mr. Rogriguez filed a "U" visa application in August 2015. The Court held that defendants did not have discretion "*to never decide it al all.*" *Id.* at *28. [emphasis in original; citations omitted]. Defendant argued a 37-month delay was reasonable "in light of the high volume of applications the agency receives." *Id.* at 49. The Court disagreed: "Neither increasing petitions nor limited resources can account for what appears to be a complete hiatus in adjudicating petitions." *Id.* at 49.  Defendant's motion to dismiss was denied without prejudice to renew after the completion of discovery. *Id.* at 50. The Court noted that "none of defendants' submissions on this motion have been tested by discovery and plaintiffs should be allowed some discovery on this issue." *Id.* at 50, citing *Yakubova v. Chertoff,* 2006 WL 65892, at *4. (E.D.N.Y. November 2, 2006).

52. "[A]t some point, defendants' failure to take any action runs afoul of section 555(b). Were it otherwise, [defendants could hold] applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic." *Kim v. Ashcroft,* 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)

**PRAYER FOR RELIEF**

53. WHEREFORE, plaintiffs pray that this Court:

54. Order defendants to adjudicate plaintiffs' applications forthwith;

55. Declare that defendants' actions violate the APA;

56. Award plaintiffs reasonable attorney fees and costs pursuant to 28 U.S. C. §2412(d) and 5 U.S.C. § 504; and

57. Grant all other such relief to plaintiffs as the Court deems proper and equitable.

Respectfully submitted,

Attorney for Plaintiffs


David L. Cleveland
DC Bar # 424209
Catholic Charities
924 G Street, NW
Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com